Warren G. VALENTINE, Respondent,

v.

ANDERSON TRUCKING SERVICE, et al., Relators.

No. 48869.

Supreme Court of Minnesota.

March 2, 1979.

1. L.1977, c. 342, § 4.

2. The provision became effective May 28, 1977. L.1977, c. 342, § 29.

Jardine, Logan & O'Brien and Louis Tilton, St. Paul, for relators.

Dale E. Mossey, St. Joseph, for respondent.

## PER CURIAM.

Certiorari on the relation of the employer and insurer to review a decision of the Workers' Compensation Court of Appeals awarding employee compensation for temporary total and permanent partial disability caused by a work-related injury employee sustained on May 27, 1976. Relators do not contest their obligation to pay compensation but urge that the finding relating to employee's daily and weekly wages, on which the compensation rates are dependent, lacks evidentiary support and that the evidence compelled a finding that the wages were irregular and required computation pursuant to Minn.St. 176.011, subds. 3 and 18.[1] We agree with the court of appeals that the employee's daily wage was not irregular and affirm its decision.

The challenged finding determined that employee received a daily wage of $36.45 and a weekly wage of $197.56. It has sub-stantial support in employee's testimony that he was paid an hourly rate of $4.05 and had standard working hours of 9 hours a day Monday through Friday and an average of 2 or 3 hours on Saturdays, and in the parties' stipulation that employee worked an average of 5.42 days per week. On this evidence the court of appeals made the obvious calculation of employee's daily wage by multiplying his hourly rate by 9 and then calculated his weekly wage by multiplying that daily wage by 5.42.

In claiming, nevertheless, that employee's wage was computed incorrectly, relators rely on a summary of the payments made to employee for his work during the 26 weeks preceding the date of his injury and on the weekly timecards on which the payments were based. Because the amounts paid employee varied, relators argue that his wages must be held to be irregular or difficult to determine under § 176.011, subd. 3. The argument is not persuasive since these variances are shown by the timecards to have been due to legal holidays, vacation days, or sick leave, for all of which employee was paid slightly less than he received for a full day's work, or to times ranging from a quarter hour to a half day when he took time off without pay for personal reasons. In fact, the timecards substantiate the basic

1. Minn.St. 176.011, subd. 3, provides in part: " 'Daily wage' means the daily wage of the employee in the employment in which he was engaged at the time of injury * * *. *If the amount of the daily wage received or to be received by the employee in the employment in which he was engaged at the time of injury was irregular or difficult to determine,* or if the employment was part time, the daily wage shall be computed by dividing the total amount the employee actually earned in such employment in the last 26 weeks, by the total number of days in which the employee actually performed any of the duties of such employment * * *." (Italics supplied.)

Minn.St. 176.011, subd. 18, provides in part: " 'Weekly wage' is arrived at by multiplying the daily wage by the number of days and fractional days normally worked in the business of the employer for the employment involved. If the employee normally works less than five days per week or works an irregular number of days per week, the number of days normally worked shall be computed by dividing the total number of days in which the employee actually performed any of the duties of his employment in the last 26 weeks by the number of weeks in which the employee actually performed such duties, provided that the weekly wage for part time employment during a period of seasonal or temporary layoff shall be computed on the number of days and fractional days normally worked in the business of the employer for the employment involved. If, at the time of the injury, the employee was regularly employed by two or more employers, the employee's days of work for all such employments shall be included in the computation of weekly wage. Occasional overtime is not to be considered in computing the weekly wage, but if overtime is regular or frequent throughout the year it shall be taken into consideration. The maximum weekly compensation payable to an employee, or to his dependents in the event of death, shall not exceed 66⅔ percent of the product of the daily wage times the number of days normally worked * * *."

employment contract embodying regular hours of work at a regular hourly rate to which employee testified. Thus, the case is entirely unlike *Newcomb v. Richfield Yards, Inc.,* 255 N.W.2d 20, 22 (Minn.1977), which presented circumstances under which the only reasonable inference permitted by the evidence was that the employee's wage was irregular, and *Podratz v. Cross Keys Motel,* 300 Minn. 360, 220 N.W.2d 352 (1974), in which an unusual work arrange-ment made the employee's wage difficult to determine.

Employee is awarded attorneys fees of $350.

Affirmed.